IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ELLIS AKWIWU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-870-WKW |
| | ) | [WO] |
| STATE OF ALABAMA | ) | |
| DEPARTMENT OF YOUTH | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ellis Akwiwu sues his former employer, Defendant Alabama Department of Youth Services ("DYS"), for national origin discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 as amended. 42 U.S.C. § 2000e *et seq.* Before the court is DYS's motion for summary judgment (Docs. # 19, 20, 21), which has been fully briefed (Docs. # 23, 28). Upon consideration of the parties' arguments, the evidence, and the relevant law, the court finds that the motion is due to be granted.

## I. JURISDICTION AND VENUE

The court exercises subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3). Personal jurisdiction and venue are uncontested.

## II.  STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id.*; Fed. R. Civ. P. 56(c)(1)(A).  Or, the movant can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact.  Fed. R. Civ. P. 56(c)(1)(B).  If the movant meets its burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists.  *Celotex*, 477 U.S. at 324.  A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor.  *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

# III.  BACKGROUND

## A.  Facts

### 1.  *Employment History and Alleged Discriminatory Treatment*

DYS is a state agency which operates juvenile correctional facilities and provides educational services to the youths in its custody.  Mr. Akwiwu was hired as a DYS Child Care Worker in 1990.  A native of Nigeria with a "pronounced and strong" accent (Second Am. Compl., at ¶ 9), Mr. Akwiwu alleges that he was discriminated against repeatedly during his employment by "fellow staff and supervisors," some of the latter of whom are named in his second amended complaint, (Second Am. Compl., at ¶ 9 (identifying James Tyler, Robert Lee, Victor Black and Ms. Byrdsong).  No fellow staff members (*i.e.*, non-supervisors) are identified by name as his antagonists in the pleading.  Nor did Mr. Akwiwu name them during his deposition when asked for names.  (*See* Akwiwu Dep. at 85–88.)  He simply testified that "every[ ]day" people "call [him] names" – although he did not describe or identify those names – and told him, "We cannot understand your Nigerian accent."  (Akwiwu Dep. at 85–86.)  Mr. Akwiwu further claims that he was subjected to disparate treatment in disciplinary matters during his tenure on the basis of his race and national origin[1] and that DYS authorities subjected him to unwarranted "write-ups, warnings, reprimands, and a demotion."  (Second Am.

---

[1] The EEOC Charge of Discrimination and Mr. Akwiwu's Opposition Brief assert national origin discrimination claims only.  (Docs. # 20-4, 23.)

Compl., at ¶ 9).  Mr. Akwiwu has an extensive disciplinary record, but he does not believe that he was disciplined justly.

Mr. Akwiwu filed a previous Title VII lawsuit in 2001 in the Middle District of Alabama against DYS.  DYS prevailed at summary judgment on February 18, 2003.  (*See* Doc. # 20-38.)  Two of the persons identified in the second amended complaint (Mr. Tyler and Mr. Lee) were Mr. Akwiwu's supervisors around or during the time that the prior civil suit was pending.  Two other supervisors (Mr. Black and Ms. Byrdsong) supervised Mr. Akwiwu in 2010 and 2011, respectively. Mr. Black allegedly sent troubled students to a dorm that Mr. Akwiwu formerly managed and undermined Mr. Akwiwu's authority there.  (*See* Second Am. Compl., at ¶ 9).  Ms. Byrdsong allegedly wrote up Mr. Akwiwu for an incident that Mr. Akwiwu claims could not have occurred as reported because Mr. Akwiwu was off work that day.  He further claims that DYS demoted him but allowed an unnamed comparator to be reassigned to a different facility in lieu of demotion. (*See* Second Am. Compl., at ¶ 9).  The person responsible for deciding to recommend a demotion is not identified by name.

DYS represents that on March 31, 2012, Mr. Akwiwu indeed was demoted from Counselor I to Child Care Worker because he failed to properly perform the duties of his job.  Mr. Akwiwu contested his demotion before the State Personnel Board ("the Board").  The Board affirmed the demotion on July 9, 2012.  (*See* Doc.

# 20-2.)  DYS contends that the Board has authority to consider any charges of unlawful discrimination in violation of Title VII and that Mr. Akwiwu failed to file a charge of discrimination with the EEOC "within thirty days after receiving notice that the [Board] ha[d] terminated [its] proceedings," 42 U.S.C. § 2000e-5(e)(1).

Mr. Akwiwu submitted a charge of discrimination to the EEOC, which the EEOC received on December 31, 2012.  (*See* Doc. # 20-4.)  In the charge, Mr. Akwiwu complained that he had been constantly harassed by supervisors, denied requests to use his leave or lost time earned, given low performance evaluations, falsely accused of infractions of DYS rules, and demoted.  (Doc. # 20-4.)  Mr. Akwiwu checked the box for "national origin" as the basis of the discriminatory treatment, and identified June 18, 2012, and November 30, 2012, as the earliest and the latest dates of discriminatory treatment.  He also indicated that the discriminatory treatment was ongoing because he checked the "continuing action" box.  (*See* Doc. # 20-4.)  Assuming that Mr. Akwiwu was not obligated to lodge a charge of discrimination with the EEOC within thirty days of the Board's final decision to uphold Mr. Akwiwu's demotion, DYS argues that the charge was still untimely because it was not "filed within one hundred and eighty days after the alleged unlawful employment practice[s] occurred."  42 U.S.C. § 2000e-5(e)(1).

2.    *Alleged Retaliation*

On June 22, 2013, Mr. Akwiwu was caught on camera sleeping on-the-job while two youths under his supervision attempted to escape from DYS's Mt. Meigs Campus.   After the incident, DYS also determined that Mr. Akwiwu falsely reported that he conducted a head count shortly after awaking.  The June incident occurred within one month of DYS's issuance to Mr. Akwiwu of a prior written warning on May 28, 2013, for sleeping on the job on May 24, 2013.  Mr. Akwiwu has maintained that he was not asleep.  Mr. Black, as acting campus administrator at Mt. Meigs, set the June 22, 2013 incident for a fact-finding hearing in late July, 2013.  (*See* Doc. # 20-15 (letter dated July 11, 2013)).

On September 4, 2013, upon a recommendation that Mr. Akwiwu be suspended or fired, Executive Director J. Walter Wood notified Mr. Akwiwu that a disciplinary hearing was set for September 17, 2013.  (Doc. # 20-16.)  DYS issued Mr. Wood's letter within days of the EEOC's issuance of a notice of right to sue letter on August 28, 2013.  (*See* Doc. # 23-1, at 2.)  Without acknowledging that DYS had already begun investigating the June 22, 2013 incident, Mr. Akwiwu asserts that DYS set the disciplinary hearing in retaliation for the EEOC's issuance of the notice of right to sue letter a few days earlier.

DYS's administrative hearing was continued, per Mr. Akwiwu's counsel's request, to January 14, 2014.   On February 4, 2014, DYS terminated Mr.

Akwiwu's employment.  Mr. Akwiwu filed a second charge of discrimination with the EEOC on February 20, 2014, alleging retaliatory termination for his engagement in protected activity.  The Board upheld DYS's decision on April 24, 2014.

**B.    Judicial Complaint and Proceedings**

On November 27, 2013, Mr. Akwiwu filed this suit.  At that time, disciplinary action by DYS for sleeping on the job had yet to be completed.  After the termination had become final in February 2014, Mr. Akwiwu filed his second amended complaint on April 14, 2014.  The pleading alleges that DYS subjected Mr. Akwiwu to discrimination on the basis of national origin, a hostile work environment,[2] and retaliation for engagement in protected activity.  DYS seeks summary judgment on all claims.

Mr. Akwiwu failed to timely respond to the motion for summary judgment in compliance with the court's general briefing order and uniform scheduling order.  When he did respond, DYS moved to strike his response, but the court denied the motion to strike.  However, as a sanction, the court awarded DYS its costs incurred in bringing the matter to the court's attention (*see* Doc. # 27), but DYS has not filed a statement accounting for its costs, as directed by the order.

---

[2] There is no separate count for hostile work environment.  The allegation is included in paragraph nine of the second amended complaint.

## IV.  DISCUSSION

**A.**   <u>**National Origin-Based Discrimination**</u>

DYS offers multiple bases for summary judgment in its favor on Mr. Akwiwu's disparate treatment discrimination claims.  (*See* Doc. # 20, at 6–10; 16–17 (asserting that certain claims are time-barred, not administratively exhausted, and precluded by *res judicata*).)  Mr. Akwiwu does not responsively engage with DYS's arguments, but instead asserts generally that he was repeatedly discriminated against on the basis of his Nigerian origin.

**1.**   *Claims Not Timely Raised in EEOC Charge of Discrimination*

First, DYS argues that all of Mr. Akwiwu's discrimination claims are time-barred.  Title VII provides:

> A charge [with the EEOC] . . . shall be filed *within one hundred and eighty days* after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, *except that* in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved *within three hundred days* after the alleged unlawful employment practice occurred, *or within thirty days* after receiving notice that the State or local agency has terminated the proceedings under the State or local law, *whichever is earlier*, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C. § 2000e-5(e)(1) (emphases added).   "A plaintiff may not sue under Title VII . . . unless he first exhausts administrative remedies by filing a timely charge of discrimination with the EEOC."  *Street v. United Parcel Serv., Inc.*, 822 F. Supp. 2d 1357, 1364 (M.D. Ga. 2011) (citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001)).   The requirement of timeliness is usually stringent.  *See Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980) ("[S]trict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.").

DYS asserts that the discriminatory acts complained of were filed in an EEOC charge more than thirty days after the Board upheld Mr. Akwiwu's demotion, or alternatively, more than 180 days after the alleged unlawful employment practices occurred.  (Doc. # 20, at 7 (citing § 2000e-5(e)(1)).)   The Board had authority to grant relief from discriminatory mistreatment, *see* Ala. Admin. Code r. 670-X-4-.03,[3] and Mr. Akwiwu instituted proceedings with the Board when he appealed his demotion and raised allegations of discrimination

---

[3] That rule provides that

[a]ny applicant or employee who has reason to believe that he has been discriminated against because of religious or political opinions or affiliations or race, sex, national origin, age, or handicap in any personnel action may appeal to the State Personnel Board.  The appellant and the person responsible for the alleged discriminatory action shall have the right to be heard by the Board or a special hearing agent and to present evidence.  If the Board finds after hearing that there was discrimination on any of the above nonmerit factors, it shall order appropriate corrective action and its decision shall be final.

based on national origin, disparate treatment, and a pattern of harassment and hostility.  (*See* Doc. # 20-3 (Letter to State Personnel Director).)  Hence, § 2000e-5(e)(1) required Mr. Akwiwu to lodge his complaints of discrimination with the EEOC within thirty days of the Board's July 9, 2012 decision upholding the demotion, and the charge of discrimination received by the EEOC on December 31, 2012 was untimely.

Further, DYS emphasizes that the same enforcement statute calls upon the complaining party to identify "discrete retaliatory or discriminatory act[s]" and the dates of such acts in his EEOC charge of discrimination.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).   Neither the second amended complaint nor Mr. Akwiwu's testimony and evidence identify any discrete acts of discrimination occurring within 180 days of December 31, 2012, save the final Board decision to uphold Mr. Akwiwu's demotion.  Assuming that the previously cited thirty-day period discussed above is inapplicable, DYS argues that Mr. Akwiwu's complaint of discriminatory demotion also falls outside of the 180-day window for filing a charge because Mr. Akwiwu's demotion was effective in March 2012.

Upon consideration of these arguments, the court finds that Mr. Akwiwu failed to timely file his charges of national origin discrimination with the EEOC.

Consequently, his judicial claim of national origin discrimination is due to be dismissed.[4]

## 2.    *No Prima Facie Case*

Assuming that Mr. Akwiwu could show that his national origin discrimination claims were timely and properly raised before the EEOC, DYS also asserts that Mr. Akwiwu fails to make a prima facie case of discrimination. (*See* Doc. # 19, at ¶¶ 6–7.)  The essence of Mr. Akwiwu's discrimination claim is that "he has been subjected to numerous disciplinary actions that are without merit." (Second Am. Compl., at ¶ 9.)  Although "[t]he methods of presenting a prima facie case . . . are flexible and depend to a large degree upon the employment situation," *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004), a plaintiff typically makes a prima facie case of discrimination by showing:  (1) he belongs to

---

[4] DYS contends that some of Mr. Akwiwu's allegations in the second amended complaint – *e.g.*, that he was subjected to unwarranted warnings and reprimands, that his work schedule was changed arbitrarily and unfairly by Mr. Lee, that Mr. Black undermined his authority in a certain dorm, and that DYS disciplined an unnamed employee more leniently – were not specifically raised in his EEOC charge and therefore not administratively exhausted.  (Doc. # 20, at 8–9.)  In light of the court's conclusion that *no* claims of discrimination were timely and discretely raised before the EEOC, this argument is moot.

DYS also raises a limited *res judicata* defense.  Mr. Akwiwu's prior lawsuit identified specific complaints of discrimination against Mr. Lee and Mr. Tyler.  (*See* Doc. # 20-37 (Plf.'s Second Am. Compl. filed Feb. 14, 2002).)  DYS represents that Mr. Lee resigned his employment with DYS in 2003 shortly after final judgment was entered in DYS's favor. Similarly, DYS contends that Mr. Tyler was Mr. Akwiwu's supervisor from 1999–2000.  Hence, DYS asserts that the allegations in the present suit involving Mr. Lee and Mr. Tyler are barred by *res judicata* because the claims were – or could have been – litigated in the prior case.  (Doc. # 20, at 17.)  Again, because it apparent that *no* claims of discrimination were timely and discretely raised before the EEOC prior to the filing of this suit, consideration of the *res judicata* defense is moot.  But the *res judicata* defense appears to have merit.

a protected class; (2) he was subjected to an adverse employment action; (3) the employer treated similarly situated employees outside of his class more favorably; and (4) he was qualified for his position. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Mr. Akwiwu cites a comparable standard for what constitutes a prima facie case (*see* Doc. # 23, at 6), but he does not present any evidence that non-Nigerian employees of DYS have been treated more favorably than himself.   (*See* Doc. # 23-1.)  Hence, Mr. Akwiwu fails to meet his obligation to cite "particular parts of materials in the record" showing that there is a genuine dispute whether DYS disparately applied its disciplinary policies to him.   Fed. R. Civ. P. 56(c)(1). Assuming *arguendo* that Mr. Akwiwu properly exhausted his administrative remedies prior to filing his suit, the court finds DYS's motion for summary judgment is nevertheless due to be granted on the merits.

## B.    **Hostile Work Environment**

DYS raises multiple arguments in support of its motion for summary judgment on Mr. Akwiwu's hostile work environment claim.    Again, Mr. Akwiwu's brief is basically unresponsive.

1.    *Claims Not Timely Raised in the EEOC Charge of Discrimination or Otherwise Not Administratively Exhausted*

DYS argues that Mr. Akwiwu failed to timely raise his allegations of hostile work environment pursuant to 42 U.S.C. § 2000e-5(e)(1) because he did not specify in his EEOC charge which allegations related to the allegedly hostile work environment.  (Doc. # 19, at ¶ 1.)  While a plaintiff should be able to identify his employer's discrete, discriminatory actions by date (for example, the day he was reprimanded, suspended, demoted, or discharged), a hostile work environment claim is often based on ongoing workplace harassment, which Mr. Akwiwu's Charge claims was "constant" and "continuing" through November 2012.  (Doc. # 20-4.)  DYS does not explain why the hostile environment claim should not be saved by the continuing violation doctrine, which creates an exception to Title VII's timely filing requirement.  *See Malone v. K-Mart Corp.*, 51 F. Supp. 2d 1287, 1300–01 (M.D. Ala. 1999) (distinguishing discrete instances of discriminatory conduct from an ongoing pattern of workplace harassment).

DYS also asserts that Mr. Akwiwu's judicial complaint includes allegations that he was harassed by fellow coworkers while the EEOC Charge attributes harassment only to "supervisors."  (*See* Doc. # 20-4.)  Therefore, DYS claims that the hostile work environment claim, as it relates to coworker harassment, was not exhausted with the EEOC.  However, DYS's position fails to acknowledge the

13

well-settled standard that a judicial complaint is bound "by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). Plaintiffs typically file charges of discrimination without the assistance of counsel. Hence, courts are encouraged to construe charges of discrimination liberally and to permit Title VII plaintiffs to seek judicial redress when their judicial allegations are "like or related to the allegations contained in the charge." *Id.* (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)).

For these reasons, DYS's arguments are not well taken, and the court will not dismiss Mr. Akwiwu's complaint of hostile work environment for failure to timely file his charge of discrimination or for failure to exhaust his administrative remedies with the EEOC.

### 2.   *No Prima Facie Case*

DYS also argues that Mr. Akwiwu's hostile work environment claim must be dismissed because, like his discrimination claim, he cannot make a prima facie case.

> [A] plaintiff wishing to establish a hostile work environment claim [must] show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the

employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  DYS contests elements (2)–(5), asserting that there was no harassment, that Mr. Akwiwu lacks evidence that the alleged harassment was based on his national origin, that the harassment was not severe enough to create a hostile environment, and that there is no legal basis for holding DYS liable for the harassment.  (Doc. # 20, at 11.)

When asked about his subjection to harassment, Mr. Akwiwu said that "every[ ]day" unnamed people in the workplace "call[ed] [him] names" – he did not say what those names were – and told him repeatedly that they could not understand his "Nigerian accent."  (Akwiwu Dep., at 85.)  He also testified that when speaking to his former supervisors, he always had to repeat himself.  Because he speaks English, he believes people should have no difficulty understanding him.  (Akwiwu Dep., at 86–87.)  Mr. Akwiwu says that being told that he could not be understood and having to repeat himself was embarrassing.[5]

Other federal courts have allowed hostile work environment claims to proceed where a plaintiff was ridiculed for having a foreign accent.  For example,

---

[5] DYS is baffled that Mr. Akwiwu has admitted in his pleading that he has a heavy accent but complains that colleagues asked him to repeat himself.  (Doc. # 20, at 14.)  It does not matter whether Mr. Akwiwu has contradicted himself concerning the existence or non-existence of his accent.  The relevant question is whether Mr. Akwiwu's testimony about the response of others to his manner of speech is adequate to support a finding that he was subjected to unwelcome harassment on the basis of his national origin.

in *Costantin v. New York City Fire Dep't*, Case No. 06 CIV. 04631GBDTHK, 2009 WL 3053851 (S.D.N.Y. Sept. 22, 2009), the court considered a plaintiff's complaint that her supervisor humiliated, harassed, and ridiculed her by demanding that she read her written reports aloud in front of coworkers so that they could laugh at her Brazilian accent and peculiar pronunciation of certain words.  *Id.* at *19.  The court noted that "[t]he EEOC 'defines national origin discrimination broadly as including' unequal treatment 'because an individual has the physical, cultural[,] or linguistic characteristics of a national origin group.'"  *Id.* (quoting 29 C.F.R. § 1606.1 (2005)).  The court reasoned that the plaintiff's testimony about her supervisor's ridicule could support a finding that the employer created a hostile work environment on the basis of the plaintiff's national origin.[6]

Additionally, in the context of disparate treatment claims, the Eleventh Circuit has said that "[c]omments about [a plaintiff's] accent may indicate discrimination based on one's national origin."  *Albert-Aluya v. Burlington Coat Factory Warehouse Corp.,* 470 F. App'x 847, 851 (11th Cir. 2012) (citing *Akouri*

---

[6] *See also Levitant v. City of New York Human Res. Admin.*, 625 F. Supp. 2d 85, 97 (E.D.N.Y. 2008) (denying summary judgment on hostile work environment claim where plaintiff complained that supervisors "disparaged his national origin, mocked his Russian accent, [and] instructed him not to conduct telephone calls in his native Russian").  *But see Edmond v. Univ. of Miami*, 441 F. App'x 721, 725 (11th Cir. 2011) (affirming summary judgment on hostile environment claim where a coworker or supervisor – it is unclear which – reminded the plaintiff that he had a Haitian accent and embarrassed the plaintiff by asking others to interpret for him); *Prado v. L. Luria & Son, Inc.*, 975 F. Supp. 1349, 1355–56 (S.D. Fla. 1997) (granting defendant's motion for summary judgment in spite of plaintiff's allegations that defendant's supervisors mocked employees who had heavy accents, prohibited employees from speaking Spanish, and prohibited persons with heavy accents from answering phones or using a public address system).

*v. Fla. Dep't of Transp.*, 408 F.3d 1338, 1341, 1348 (11th Cir. 2005)).  Hence, the court concludes that disparaging remarks about Mr. Akwiwu's accent potentially could constitute harassment on the basis of his national origin.

But the fourth element of a hostile work environment claim is a high hurdle: Mr. Akwiwu must show that he was subjected to harassment that was severe or pervasive.  The alleged harassment must be both subjectively and objectively severe.  *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc). That means that Mr. Akwiwu personally must have perceived the alleged harassment to have been so severe that it altered the terms or conditions of his employment,[7] and his perception must have been objectively reasonable in view of "all the circumstances."  *Id*.  Four factors are helpful in determining whether harassment was objectively severe:  "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."  *Id.*

Mr. Akwiwu has vaguely testified that "[s]ome" – perhaps even "most" – of the DYS staff called him unidentified "names" and told him that they could not understand his "Nigerian accent."  (Akwiwu Dep. at 85–86.)  He claimed that he

---

[7] DYS contends that the alleged harassment "cannot possib[ly] be perceived as . . . subjectively abusive" (Doc. # 20, at 14), but it is hard to contend against a plaintiff's testimony of his subjective perception unless that testimony is impeachable.  DYS's argument is rejected at this juncture.

could identify some of the perpetrators, but declined to actually offer their names. (Akwiwu Dep. at 86.)  He also complained that his supervisors required him to repeat himself.  (Akwiwu Dep. at 86–87.)  Mr. Akwiwu claims that this made him feel embarrassed and humiliated, but it is not clear from his testimony whether others were ridiculing him for his accent and national origin or just expressing their difficulty understanding his speech.[8]

Applying the four factors, Mr. Akwiwu was confronted about his accent on a daily basis, so the alleged harassment was frequent.  But as for the degree of severity, it is difficult to determine from the record whether coworkers or supervisors spoke to Mr. Akwiwu in a demeaning or derogatory manner or whether they simply expressed their inability to understand him.[9]  Even if coworkers or

---

[8]  Furthermore, Mr. Akwiwu's deposition testimony appears to conflate disparate treatment with hostile work environment.  (*See, e.g.*, Akwiwu Dep. at 87–89 (complaining about being given leave without pay as opposed to being allowed to use sick or annual leave hours, or being assigned to maintain order among the youths in a certain dormitory without any staff assistance).)  Mr. Akwiwu's testimony does not associate this alleged disparate treatment with any person's indication of hostility about Mr. Akwiwu's national origin, and therefore, it is not considered in this hostile work environment analysis.

[9]  *Cf. Yili Tseng v. Florida A & M Univ.*, 380 F. App'x 908, 909–10 (11th Cir. 2010). There, the Taiwanese plaintiff attempted to prove direct evidence of discrimination for failure to promote him by offering "several comments by his supervisors in annual evaluations and in faculty meetings that 'language [was] a challenge for him' and that he needed to 'work on his English skills.'"  The court rejected these remarks as evidence of direct discrimination because "an employee's heavy accent or difficulty with spoken English can be a legitimate basis for adverse employment action where effective communication skills are reasonably related to job performance."  *Id.* at 909.  The Eleventh Circuit distinguished these supervisors' comments from cases where harassers made "blatant remarks," "mock[ed] [the plaintiff's] accent" or "ma[de] disparaging remarks about" the plaintiff's nationality.  *Id.* at 909–10.  Thus, it is important to distinguish honest criticism (*e.g.*, "I cannot understand what you are saying") from national origin-based hostility.

supervisors were rude when they told Mr. Akwiwu that they could not understand him, "[d]iscourtesy or rudeness should not be confused with [national origin-based] harassment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Furthermore, without knowing what "names" Mr. Akwiwu was called, it is impossible to discern the severity of any alleged name-calling.  Next, there is no indication that the harassment involved threats of physical violence, but because the comments were critical of Mr. Akwiwu's accent, and by association, his Nigerian origin, *see Albert-Aluya*, 470 F. App'x at 851, it was objectively reasonable for Mr. Akwiwu to feel humiliated.[10]  Lastly, DYS points out that when it pressed Mr. Akwiwu to describe an instance of harassment that caused him to be unable to perform his job well, he responded that "[he] was performing [his] job . . . like any other person." (Akwiwu Dep. at 82.)  However, a fair reading of the deposition transcript shows that Mr. Akwiwu may not have understood defense counsel's question.  (*See* Akwiwu Dep. at 82 ("There's nothing.  There's no incident.  There's no sickness that made me not perform my job.").)  Hence, the record is unclear as to whether Mr. Akwiwu claims that his job performance suffered as a result of the alleged spoken harassment.

---

[10] Consider a person with a speech impediment.  Even if others are kind and respectful to him about the existence of his impediment, he nevertheless feels some degree of embarrassment.  Hence, whether others were cruel to Mr. Akwiwu or not, it is objectively reasonable that he felt humiliated about others' reactions to his accent.

Upon consideration of the four factors and the totality of the circumstances, and viewing Mr. Akwiwu's testimony in the light most favorable to him, the record evidence is insufficient to support a finding that Mr. Akwiwu's coworkers or supervisors subjected him to harassment that was severe or pervasive as a matter of law. Mr. Akwiwu's deposition testimony raises as many questions as it offers answers, and his opposition brief provides no analysis on how the evidence is sufficient to demonstrate a prima facie case of hostile work environment. It is Mr. Akwiwu's burden to make a prima facie case, *see Freeman v. City of Riverdale*, 330 F. App'x 863, 865 (11th Cir. 2009), and DYS has properly employed summary judgment to show that Mr. Akwiwu "cannot produce admissible evidence to support" a case of hostile work environment, Fed. R. Civ. P. 56(c)(1)(B).

Consequently, DYS's motion for summary judgment is due to be granted with respect to Mr. Akwiwu's hostile work environment claim.[11]

## C.    Retaliation

DYS argues that it is entitled to summary judgment on Mr. Akwiwu's complaint of retaliatory discharge because Mr. Akwiwu cannot make a prima facie case of retaliation, and even if he could, he cannot rebut DYS's legitimate, non-retaliatory reason for firing him.

---

[11] In the absence of thorough briefing, the court declines to address whether Mr. Akwiwu can establish the fifth element, *i.e.*, a basis for holding DYS liable for the allegedly hostile work environment.

### 1.    *No Prima Facie Case*

"To establish a prima facie case of retaliation under Title VII, the plaintiff must show (1) that [he] engaged in statutorily protected expression; (2) that [he] suffered an adverse employment action; and (3) that there is some causal relation between the two events." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (internal quotation marks omitted).  A plaintiff may meet his burden of showing causation if there is "close temporal proximity between the statutorily protected activity and the adverse employment action."  However, "temporal proximity, without more, must be very close."  *Id.* at 1364.

Mr. Akwiwu relies on close temporal proximity.  (Doc. # 23, at 5, 11.)  As alleged in the second amended complaint, the retaliation claim is partially premised upon Mr. Akwiwu's allegation that he engaged in statutorily protected activity when the EEOC issued its notice of right to sue letter on August 28, 2013, almost nine months after he filed his charge of discrimination.  (*See* Second Am. Compl., at ¶ 7.)  Mr. Akwiwu posits that Mr. Wood's issuance of a letter on September 4, 2013, scheduling a hearing on the recommendation that Mr. Akwiwu be suspended or dismissed from his job, is causally related to the EEOC's letter. DYS protests that Mr. Akwiwu did not engage in protected activity by passively receiving the EEOC's issuance of a notice of right to sue letter.  (Doc. # 20, at 18 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam).)

21

The objection is well taken.  In *Clark County School District*, the Supreme Court rejected in dicta a litigant's "utterly implausible suggestion that the EEOC's issuance of a right-to-sue letter – an action in which the employee takes no part – is a protected activity of the employee."  *Id.* at 273.  The Supreme Court also explained that "[e]mployers need not suspend previously planned [actions] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."  *Id.*  Here, as DYS points out, disciplinary action against Mr. Akwiwu was ongoing and did not begin or end with Mr. Wood's letter on September 4, 2013.  (*See* Doc. # 20-15; *see also* Doc. # 20, at 20 (asserting that Mr. Wood's letter merely set a hearing and did not mete out final discipline).) Eliminating from consideration the EEOC's issuance of the notice of right to sue letter, Mr. Akwiwu most recently had engaged in protected activity upon filing his EEOC charge on December 31, 2012, and there is insufficiently close temporal proximity between that date and any allegedly retaliatory employment action, particularly his termination in February 2014.[12]

---

[12] Additionally, DYS asserts that, pursuant to the Supreme Court's holding in *University of Texas Southwest Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), "Title VII retaliation claims must be proved according to traditional principles of but-for causation."  *Id.* at 2533. "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Id.*  DYS argues that because Mr. Akwiwu continued to commit disciplinable infractions, he cannot show that but for his filing of his charge of discrimination, he would have kept his job.  While this argument is sound, it anticipates and

Mr. Akwiwu thus fails to make the requisite causal connection on the basis of close temporal proximity.  Because there is no evidence causally connecting Mr. Akwiwu's engagement in protected activity with an adverse employment action, Mr. Akwiwu fails to make a prima facie case of retaliation.

### 2.    *Legitimate, Nonretaliatory Reason Not Rebutted*

Even if Mr. Akwiwu could make a prima facie case of retaliation, he does not rebut DYS's reason for the termination as pretext.  After a plaintiff makes his prima facie case, the employer may "articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability.  The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct."  *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  In this case, DYS asserts that Mr. Akwiwu lost his job because he slept on the job while youths attempted to escape and falsely reported conducting a head count upon awaking.

In response, Mr. Akwiwu contends that DYS's reason for terminating employment is "subjective."  (Doc. # 23, at 8.)  By calling the reason subjective, Mr. Akwiwu continues to advance his narrative that he never slept on the job, and he proposes that DYS's proffered reason cannot be conclusively proven and

---

essentially duplicates DYS's proffered legitimate nonretaliatory reason for terminating Mr. Akwiwu's employment, which is addressed separately *infra*.

23

therefore is illegitimate.   DYS's video evidence supports its belief that Mr. Akwiwu slept while youths fled his supervision, but even if it that evidence did not exist, Mr. Akwiwu has not contested DYS's ancillary conclusion that he failed to actually conduct a head count upon awaking.   Moreover, "subjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions.   Subjective reasons can be just as valid as objective reasons," so long as they are "clear and reasonably specific."   *Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc).   Here, DYS's reason for terminating Mr. Akwiwu has been clearly articulated with a "specific factual basis," and this court must not second-guess an honest reason that would motivate a reasonable employer.   *Id.* at 1030, 1034.

Mr. Akwiwu also suggests that DYS's reason should be disbelieved because Mr. Akwiwu "has a history of complaint[s] against DYS, including [an] EEOC charge and civil rights litigation."  (Doc. # 23, at 8.)  In other words, he claims that DYS should be suspected of looking for a reason to fire him.  But to successfully rebut the reason as pretextual, Mr. Akwiwu is required to confront DYS's reason "head on."  *Chapman*, 229 F.3d at 1030.  This argument evades the requisite head on rebuttal.   Hence, even if Mr. Akwiwu could make a prima facie case of retaliation, he has not shown that DYS's stated reason for terminating his employment is a pretext for retaliation.

For these reasons, DYS's motion for summary judgment is due to be granted as to Mr. Akwiwu's claim of retaliation.

## V.  CONCLUSION

In sum, no Title VII claim survives.   In accordance with the foregoing analysis, it is ORDERED that Defendant's motion for summary judgment (Doc. # 19) is GRANTED.

A separate final judgment will be entered.

DONE this 15th day of October, 2014.

                                   /s/ W. Keith Watkins
_____
                      CHIEF UNITED STATES DISTRICT JUDGE